# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| WOODROW WHITTAKER, *et al.*, | : |
| | : Case No. 2:15-CV-02584 |
| Plaintiffs, | : |
| | : JUDGE ALGENON L. MARBLEY |
| v. | : |
| | : Magistrate Judge Elizabeth P. Deavers |
| ALLSTATE PROPERTY & | : |
| INSURANCE COMPANY, | : |
| | : |
| Defendant. | : |

## OPINION & ORDER

This matter is before the Court on the parties' Motions for Summary Judgment. (ECF No. 53, 54). For the reasons that follow, this Court **GRANTS** Plaintiffs' Motion for Summary Judgment and, accordingly, **DENIES** Defendant's Motion for Summary Judgment.

### I. BACKGROUND

#### A. Factual Background

Plaintiff Woodrow Whittaker and his wife, Carolyn Whittaker, owned a home at 4128 Trumbull Street, Bellaire, Ohio. (Examination Under Oath (EUO) of Woodrow Whittaker, ECF No. 52, at 4). They purchased this property in 2007. (EUO at 33). Plaintiffs lived in the home for a short period of time before moving to California. (EUO at 17). Plaintiffs' son also lived in the house for a time, before his death in July 2012; no one lived in the house after his death. (EUO at 47, 48).

In 2012 and 2013, there were at least two break-ins at the property. (EUO 66-68). During those break-ins, furniture and appliances were stolen, in addition to the hot water heater, furnace, air conditioning components, and dehumidifier. (EUO 67-71). Subsequently, the utilities – namely, gas and water – were shut off. Plaintiff Woodrow Whittaker's brother was completing

some renovations on the property, but the last time Plaintiff went to the property was in February, 2014. (EUO 49, 50-51).

On June 7, 2014, the property at 4128 Trumbull Street was destroyed in a fire. (ECF No. 3 at 1). At the time of the fire, the property was insured by Defendant Allstate Property & Casualty Insurance Company ("Allstate"). Plaintiffs made a claim under their Allstate homeowner's insurance policy. Defendant assigned an adjuster to the case; she retained an independent engineering company to complete an "origin and cause analysis with respect to the fire loss." (Defendant's Motion for Summary Judgment, ECF No. 54, at 3). An inspection was completed on June 11, 2014. The inspection found that the fire was incendiary in nature – gasoline was found in both areas of origin – and deliberately set. (*Id.* at 4). The fire investigator also found evidence of squatters in the house. (*Id*). Following these findings, Defendant denied Plaintiffs' insurance claim. A denial letter was sent to Plaintiffs explaining that there was no coverage available.

This suit followed. In their initial complaint, Plaintiffs allege a breach of contract based on the denial of the claim, and allege Defendant denied their claim in bad faith. Plaintiffs request compensatory and punitive damages, attorneys' fees, costs associated with this action, and any other relief to which they are entitled. Magistrate Judge Deavers bifurcated the issues, determining that the coverage question could be dispositive. As a result, the only question facing this court is how to construe the insurance policy.

### B. Relevant Policy Language

Plaintiffs' insurance policy at issue has three sections: Coverage A, Coverage B, and Coverage C. Coverage A is the dwelling protection coverage, and it is "all-risk" – that is, all risks are covered as long as they are not specifically excluded by the policy terms. Coverage C is

Personal Property Protection, and the coverage is "named peril," meaning only the specifically named perils are covered. Coverage B, Other Structures Protection, is not at issue.

Coverage A, Dwelling Protection, provides coverage for "sudden and accidental direct physical loss to property described in **Coverage A—Dwelling Protection**…except as limited or excluded in this policy." (ECF No. 53, Ex. 2, at 7; emphasis in the original). Coverage C, Personal Property Protection, reads in relevant part:

> *Losses We Cover Under Coverage C*
> We will cover sudden and accidental direct physical loss to the property described in **Coverage C—Personal Property Protection**, except as limited or excluded in this policy, caused by:
>
> 1. Fire or Lightning
>
> …
>
> 8. Vandalism or Malicious Mischief
>
> **We** do not cover vandalism or malicious mischief if **your dwelling** has been vacant or unoccupied for more than 30 consecutive days immediately prior to the vandalism or malicious mischief. A **dwelling** under construction is not considered vacant or unoccupied.
>
> (emphasis pattern in the original)

The term "dwelling" is defined (ECF No. 53, Ex. 2, at 3) but the terms "vandalism" and "malicious mischief" are not.

In a section titled "Additional Protection," the policy also offers an arson reward, which reads:

> 10. **Arson reward**.
> We will pay up to $5,000 for information leading to an arson conviction in connection with a fire loss to property covered under Section I of this policy. The $5,000 limit applies regardless of the number of persons providing information. (ECF No. 53, Ex. 2, at 12).

## C. Question Presented

The issue before this Court is whether the insurance policy covers a fire loss, even when that fire has been deemed by experts to have been arson. Plaintiffs argue that because "fire" and "vandalism or malicious mischief" are enumerated separately, each term must be given independent meaning. (ECF No. 53 at 10). If a loss due to fire as a result of arson was nevertheless categorized under "vandalism or malicious mischief," Plaintiffs argue, this would effectively erase "fire" from the policy. In addition, the only mention of "arson" in the policy is in connection with the "arson reward." (ECF No. 56 at 7). Plaintiffs contend that: first, "arson" is not an enumerated type of damage under the "vandalism or malicious mischief" paragraph—indeed, vandalism is not defined anywhere in the policy; and second, Plaintiffs argue, if arson is a type of "fire loss" for the purposes of the arson reward, it must also be a fire loss for the purposes of coverage. To read the policy to deny them coverage, Plaintiffs argue, would run counter to Ohio law and Sixth Circuit precedent.

Defendants counter that the law requires that each word in the contract be given its plain, unambiguous, everyday meaning. (ECF No. 54 at 8). By this reading, "vandalism or malicious mischief" would naturally include "arson," which Black's Law Dictionary defines as "malicious burning of someone else's dwelling house." (*Id.* at 10). Defendants also argue that listing "fire" and "vandalism or malicious mischief" separately does not create ambiguity in the case of arson, since arson "involves both fire and an act of vandalism or malicious mischief." (*Id.* at 11). Because the court cannot insert ambiguity into a document where the plain meaning is evident on its face, the policy must be read to exclude coverage in cases of arson loss. (ECF No. 54, at 9-10).

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides, in relevant part, that summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." A fact is deemed material only if it "might affect the outcome of the lawsuit under the governing substantive law." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The nonmoving party must then present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos., Inc.*, 8 F.3d 335, 340 (6th Cir. 1993). The mere possibility of a factual dispute is insufficient to defeat a motion for summary judgment. *See Mitchell v. Toledo Hospital*, 964 F.2d 577, 582 (6th Cir. 1992). Summary judgment is inappropriate, however, "if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248.

The necessary inquiry for this Court is "whether 'the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law.'" *Patton v. Bearden*, 8 F.3d 343, 346 (6th Cir. 1993) (quoting *Anderson*, 477 U.S. at 251-52). The mere existence of a scintilla of evidence in support of the opposing party's position will be insufficient to survive the motion; there must be evidence on which the jury could reasonably find for the opposing party. *See Anderson*, 477 U.S. at 251; *Copeland v. Machulis*, 57 F.3d 476, 479 (6th Cir. 1995). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the nonmoving party. *S.E.C. v. Sierra Brokerage Servs., Inc.*, 712 F.3d 321, 327 (6th Cir. 2013). Therefore, for purposes of Plaintiffs' Motion, the Court will view the facts in the light most favorable to

Defendants, and in evaluating Defendant's Summary Judgment Motion, the Court will consider the facts in the light most favorable to Plaintiffs.

### III. ANALYSIS

Plaintiffs argue that "arson" is a type of "fire" damage, and so is covered by the policy. In the alternative, Plaintiffs argue that the policy is ambiguous, and Ohio law requires the policy to be read in favor of insurance, because the insurer is understood to be the sophisticated party and the party with the power to write the policy. Defendants argue that arson is a type of "vandalism or malicious mischief" when each word is given its plain meaning, and insist that the court cannot read into the policy any ambiguity that does not exist on the face of the document.

#### A. The Case *Sub Judice*

The question of whether, in an insurance policy such as the one at issue here, a loss due to arson is properly classified as a loss due to "fire" or a loss due to "vandalism or malicious mischief" is a question of first impression for the Sixth Circuit Court of Appeals. The Northern District of Ohio, construing another Allstate insurance policy, apparently identical in these paragraphs, found that "arson" was a covered loss under "fire," and was not a type of "vandalism or malicious mischief." For the reasons discussed in this section, this Court agrees with the analysis of the Northern District of Ohio, and thus grants Plaintiffs' Motion for Summary Judgment.

The parties do not contest that principles of contract interpretation from Ohio and Sixth Circuit precedents guide this Court's reading of the insurance policy. "In Ohio, insurance is a contract, and the parties' rights under the policy are purely contractual in nature." *Park-Ohio Industries, Inc. v. Home Indent. Co.,* 975 F.2d 1215, 1218 (6th Cir. 1992) (citing *Nationwide Mut. Ins. Co. v. Marsh,* 472 N.E. 2d 1061, 1061 (Ohio 1984). When determining the meaning of

an insurance contract, "the contract should be read as a whole and each word given its appropriate meaning, if possible." *Burdett Oxygen Co. of Cleveland v. Employers Surplus Lines Ins. Co.,* 419 F.2d 247, 248 (6th Cir. 1969). When a policy is ambiguous, disputes are to be resolved in favor of the insured. *Furstenberg v. Mowell*, 409 N.E. 2d 1035 (1978). In particular, whenever an ambiguity in an insurance contract is a result of choices of the insurer, the policy must be construed in the light most favorable to the insured. *Chavers v. St. Paul Fire & Marine Insurance Co.,* 295 F.2d 812 (6th Cir. 1961).

There is a presumption under Ohio law that what is not clearly excluded from coverage is included. "The burden is on the insurer to prove that a particular claim is precluded by an exclusion provision." *State Farm v. Heirmer*, 720 F.Supp. 1310, 1314 (S.D. Ohio 1988). Or, put more precisely, "an exclusion from liability must be clear and exact in order to be given effect." *Lane v. Grange Mut. Cos.,* 543 N.E. 2d 488, 490 (1989).

Applying these principles, the contract must be construed in favor of the Plaintiffs. As a threshold matter, by its plain meaning, "arson" is a type of fire, it is not unambiguously excluded from coverage under the provision concerning "vandalism or malicious mischief." And, to the extent there could be ambiguity in the policy, Ohio principles of contract interpretation compels this Court to construe the policy in favor of coverage and against the insurer.

First, "fire," "vandalism," and "malicious mischief" are not defined in the policy. As a result, each term must be given its plain, dictionary definition. As set forth above, although the definition of arson does sometimes include the idea of "mischief" or "vandalism," this is not an essential element of the definition. By contrast, every definition of arson will include the idea of "fire" or "burning." Put more plainly: by their simple dictionary definitions, vandalism can exist apart from arson, but arson cannot exist apart from fire.

7

Plaintiffs analogize "arson" to the definitions found in the criminal code. The Ohio criminal code, for example, which criminalizes arson, reads in relevant part: "No person, by means of fire or explosion, shall knowingly…cause, or create a substantial risk of physical harm to any property of another without the other person's consent." Ohio Rev. Code 2909.03 § (A)(1). By contrast, the relevant portion of the criminal code forbidding "vandalism" reads: "No person shall knowingly cause serious physical harm to an occupied structure or any of its contents." Ohio Rev. Code § 2909.05 (A). Similarly, the provision criminalizing mischief reads, "No person shall: without privilege to do so, knowingly…deface, damage, destroy, or otherwise improperly tamper with…the property of another." Ohio Rev. Code § 2909.07(A)(1)(a). While some types of criminal mischief also involve the setting of fires (Ohio Rev. Code § 2909.07 (A)(5)), the point remains: the element of "fire" is *essential* and *necessary* to the concept of arson, but is not definitionally an element of vandalism, and only occasionally one permutation of mischief. Thus, although arson can sometimes be understood as being *like* "vandalism or malicious mischief," arson is *always* understood to involve fire.

Second, the policy must be read so as to give independent meaning to each term, and without rendering any term superfluous. In addition, the policy must be read so that each term is given a consistent meaning across the policy. The policy offers an "arson reward": up to $5,000 for information "leading to an arson conviction in connection with a *fire loss* to a property covered…under this policy." (ECF no. 53, Ex. 2, at 12) (emphasis added). Here, arson is understood by the policy writers to be a type of "fire loss." Holding this meaning constant across the document, arson must be understood as a type of "fire" for coverage purposes, not a type of "vandalism or malicious mischief."

Third, Defendant has the power to define "vandalism" to include incidents of arson, but has not done so. Defendant erroneously relies on *McPherson v. Allstate Indemnity Company*, but *McPherson* actually demonstrates why the presumption in favor of insurance is proper. *McPherson v. Allstate Indem. Co.*, No. 3:11CV638-WHA, 2012 WL 1448049, at *2 (M.D. Ala. Apr. 26, 2012). In *McPherson*, defendant Allstate wrote an insurance policy to exclude from coverage "accidental direct physical loss *caused by fire resulting from vandalism*" (emphasis added). This indicates that Allstate is able to define and differentiate fire, arson, and vandalism in its policies. It also may indicate why the *McPherson* court concluded that the arson loss in question was not covered by the policy. As the sophisticated party who controls the text of the policy, the Defendant had the opportunity to specify coverage in situations of arson. Policies like the one at issue in *McPherson* demonstrate that it is possible to write an insurance policy that makes these coverages clear. In the policy at issue, the text leads this Court to conclude that "arson" is a type of "fire damage." Although the terms in this policy are not so ambiguous as to resort to a tie-breaker, this Court nevertheless construes the language in favor of insurance, and for the insured, as Ohio law requires. *See e.g. Furstenberg,* supra.

### B. This Question in Other Courts

When apparently identical insurance policy was at issue in the Northern District of Ohio, Judge Pearson had the question certified to the Supreme Court of Ohio for guidance as to the Ohio law governing these policies. *Wells Fargo Bank, N.A. v. Allstate Ins. Co.,* 290 F. Supp. 3d 715, 716 (N.D. Ohio 2017), *appeal dismissed*, 735 F. App'x 208 (6th Cir. 2018). The Supreme Court of Ohio "issued an order that the certification was improvidently allowed and declined to answer the question presented." *Id. See also, Wells Fargo Bank N.A. v. Allstate Ins. Co*, 54 N.E. 3d 1227 (Ohio 2016). Following that dismissal, Judge Pearson decided *Wells Fargo*.

In *Wells Fargo*, the Court found that "the Policy provides coverage for a loss caused by fire or arson, but does not cover vandalism or malicious mischief at a vacant dwelling." 290 F. Supp. 3d at 723. The Court reached this result by applying the same principles of contract interpretation this Court has employed here: reading the document as a whole and giving terms a consistent meaning across the policy. *Id.* at 722 ("When a term exists in multiple places in a contract, the term should be given the same meaning throughout the contract, unless another interpretation is clear from the language of the contract."). The arson reward was also relevant to the Court's reasoning. "In interpreting this provision in harmony with the rest of the terms of the Policy, "arson" is a subset of "fire" rather than "vandalism" under the structure of the Policy." *Id.* at 723. Also noting the crucial difference in the language of the policy at issue in *McPherson*, the Court rejected Defendant Allstate's efforts to rely on that decision: "if Allstate had intended a different result, as drafter of the policy, it could have distinguished between accidental and intentionally set fires, as it did in *McPherson*." *Id.* at 723. This Court agrees with Judge Pearson's reasoning at each step: the document must be read as a whole, terms must have a consistent meaning, and the Defendant has demonstrated a capacity to specifically exclude coverage in cases of arson.

Although several courts have found that the policy exclusion for vandalism and/or malicious mischief does not cover damage as a result of arson, other courts have ruled that arson falls within the vandalism exception and have ruled that the policy will not cover arson damage. *See Wells Fargo*, 290 F. Supp. 3d at 719-20 (citing cases). In large part, these disparate outcomes can be explained by the fact that the courts are interpreting the specific language of the policy in that individual case or controversy.[1]

---

[1] *Wells Fargo* cites a mix of state and federal cases to illustrate the split in the courts on this question. Some of the federal cases find that the fire provision in the insurance policy covers the arson; others find that arson falls within

*Potomac* is one such case. *Potomac Insurance Company of Illinois v. NCUA a/k/a National Credit Union Association*, No. 96 C 1044, 1996 WL 396100 (N.D. Ill, July 12, 1996). *Potomac* is worth a brief discussion to distinguish it from the present case because Defendants rely on its holding and because its reasoning is instructive in explaining the split in authorities on this question. The *Potomac* court said that "arson—the willful or malicious destruction of public or private property through the setting of a fire—is vandalism." (*Potomac* at *4). However, *Potomac* notes earlier in the opinion that the policy in question "has no exclusion or limitation applicable to damage caused by fire." *Id.* at *1. As a result, Plaintiffs in *Potomac* were not making an argument about where "arson" fell as between "fire" and "vandalism" provisions of the policy. Although the *Potomac* court says "it is apparent that arson…is vandalism," there was no option, in the policy, to understand arson as fire. As a result, the purported ambiguity in the present case was not an issue for the *Potomac* case. The policies are not similar enough on the crucial coverages, and the analogy does not carry. *Potomac* is therefore inapposite and not persuasive.

## IV. Conclusion

For the reasons above, this Court concludes that there is no "genuine dispute of material fact." In reaching this conclusion, this Court agrees with the analysis of Judge Pearson in the Northern District of Ohio, which read an apparently identical policy in this fashion. The Court therefore **GRANTS** Plaintiff's Motion for Summary Judgment on the question of coverage, and accordingly **DENIES** Defendant's Motion for Summary Judgment.

---

the definition of vandalism. But in all of the cases, the language of the specific policy being interpreted is dispositive. Compare *R & J Development Co., LLC v. Travelers Property Cas. Co. of America*, 2012 WL 1598088 at *2 (E.D. Ky) (reading the vandalism exclusion to nevertheless cover damage from arson in a policy with a fire loss provision because the "presumption against superfluity strongly suggests that each of these terms should have independent meaning"); and *Bates v. Hartford Ins. Co of Midwest*, 787 F. Supp. 2d 657, 662 (E.D. Mich. 2011) (finding a policy unambiguous when it had separate coverages for "vandalism" and for "fire and lightning" and so reading coverage for arson damage); with *Potomac, infra,* and *MacPherson, supra.*

11

**IT IS SO ORDERED.**

            ___s/Algenon L. Marbley_____
            **ALGENON L. MARBLEY**
            **UNITED STATES DISTRICT JUDGE**

**DATED: December 18, 2018**